BATCHELOR v. DEGNON REALTY & TERMINAL IMPROVEMENT CO.

(Supreme Court, Appellate Division, Second Department. December 30, 1910.)

RAILROADS (§ 357*)—INJURIES TO PERSONS ON TRACK—DEGREE OF CARE.

  Plaintiff, a lineman, while on defendant's track which was laid along a public street, was injured by being run into by one of defendant's dirt cars, which were being moved along the avenue. Before starting the dirt cars, defendant's brakeman was sent forward to give the signal for starting the train, and he gave the signal while standing four or five feet away from the car and about midway between the ends of the car. On looking along the track from where he stood, he saw no one and signaled the engineer to go ahead. *Held*, that only a reasonable degree of care was necessary under the circumstances, and that such care was exercised.

  [Ed. Note.—For other cases, see Railroads, Cent. Dig. § 1235; Dec. Dig. § 357.*]

  Hirschberg, P. J., dissenting.

Appeal from Trial Term, Queens County.

Action by Andrew Batchelor, an infant, by John Batchelor, his guardian ad litem, against the Degnon Realty & Terminal Improvement Company. Judgment for plaintiff, and defendant appeals. Reversed.

Argued before HIRSCHBERG, P. J., and WOODWARD, BURR, RICH, and CARR, JJ.

William L. Kiefer (Joseph F. Murray, on the brief), for appellant.
George F. Hickey (M. P. O'Connor, on the brief), for respondent.

WOODWARD, J. Upon a former appeal in this case, where the defendant was running its dirt cars along Middleburg avenue on a temporary track, it was held to be error to grant a motion for a nonsuit, where it appeared that the train of dirt cars was suddenly backed down upon the infant plaintiff, and there was no evidence in the case showing that there was any one at the crossing, or at the rear of the train, or anywhere, to look out for people crossing, or any evidence on that head. 131 App. Div. 136, 115 N. Y. Supp. 93. It is claimed upon the present appeal that there was a conflict of evidence upon this point in the last trial, and that the verdict of the jury in favor of the plaintiff should be sustained. It seems that Moore street comes down to and is merged in Middleburg avenue, without crossing the same; that the infant plaintiff in this action came down Moore street and attempted to cross over Middleburg avenue, passing over the defendant's temporary track; that the train of dirt cars stood with its rear end near the Moore street line; and that the same started

---

suddenly and ran over the infant plaintiff, then only five years of age, doing some damage to the child's hands. The present trial appears to have proceeded upon the theory that this court had laid down the rule that there must have been some one stationed upon the rear car to give warning, in order to absolve the defendant from the charge of negligence, and the plaintiff's witnesses testify with this end in view. One of them, who claims to have been an eyewitness, was asked in reference to the rear car; "Will you state what you saw on that car as to whether or not there was anybody on that car at the rear of it?" This was objected to as leading, and, on the objection being overruled, the witness answered, "There was a man on the third car," and, being further interrogated, answered that in so far as he saw there was no one on the rear car. One other eyewitness testified, "I don't look much at that train," and, in answer to the question, "Was there anybody, so far as you could see, on the back of the train?" answered: "On the back? No. Nobody was back of the train. Nobody was on the back." A third witness, and this completes the list, testified:

"When I saw it standing still, I did not see anybody on the rear of it. I couldn't tell whether there was anybody on the rear of it."

Obviously the testimony of this last witness is not of consequence. She merely says that she did not see any one on the rear; that she could not tell whether there was any one there. Moreover, this court did not lay down the rule that it was necessary to have any one on the rear car; it was merely suggested that "there was no evidence that there was any one at the crossing, or at the rear of the train, or anywhere, to look out for people crossing, or any evidence on that head." That is, there was no evidence that the defendant had operated its dirt cars in a quasi public place with care. On the present trial the defendant introduced evidence, not that there was some one on the rear car, or at the rear of the car, but that the engineer, who was one of the witnesses, had directed the brakeman, known as "Steve," to "go ahead and get a block, and when we stop be ready to block the wheels where they won't move," and that the brakeman did go ahead, and that "I got on the engine, and when he (the brakeman) was away out at the other end he gave me a signal 'Go ahead,' and I moved the cars ahead"; that he moved them 25 or 30 feet, and then some one called to him and he stopped the train, when it developed that the child had been injured, he being found in a ditch or culvert under the train with his hands lacerated. On cross-examination the engineer testified:

"So the brakeman ran ahead to the end of the cars and I got up on the engine. * * * I looked ahead of me. I had to wait there until I got the signal from him before I could move. When he gave the signal to move, he was away at the front end of the train. I guess he was out at the first car. He might be standing between the first and second car; yes, I will swear to that. I never did say he was between the second and third car at the last trial in this case."

The witness then described the situation, and indicated that the brakeman was standing about four or five feet away from the car, and about half of the length of a dirt car, which is described as about

nine feet and six inches long, so that it appears from the evidence brought out by the plaintiff on cross-examination that the defendant's brakeman, at the time of giving the signal to start, was in a position to see the track in the rear of the train up to very near to the back end of the car, and that he was there for the purpose of giving the signal to move the cars. The defendant's brakeman fully corroborates the engineer as to what was done in reference to moving the train and the position which he occupied, and the brakeman says:

"I was some few feet away from the side of the cars as they were standing upon the track. I was about opposite the first and second cars. There is an open space between the first and second car where you can look right through and watch the men working at the steam shovel. After I got to that point, I took a look along the track and saw nobody around the track or on it and gave the engineer a 'Go ahead' signal, and he came ahead and went, I guess, about two cars—and I heard a scream," etc.

There was no dispute about this; the evidence was wholly uncontradicted, and is not inconsistent with the testimony of the plaintiff's witnesses that there was no one on the rear, or at the rear, of the train. It is entirely clear that a man standing four or five feet away from an ordinary dump car ten feet long could see the track in the rear of the train well up to the end of the car. An examination from that point, at a time and under circumstances which did not call for the highest possible degree of care, would constitute that reasonable degree of care which the law requires in a case of this character, and, there being no dispute as to the facts, it became the duty of the learned court to grant the motion to dismiss the complaint, or to set aside the verdict, as being contrary to law. The undisputed evidence is that the train was not negligently moved; that it was not moved until the defendant's employés had made a reasonable examination of the track and had duly signaled for the movement which had been directed by the superintendent of the work. Reasonable care was the duty owed to the plaintiff under the circumstances disclosed by the evidence, and the defendant's evidence shows this degree of care. The judgment and order appealed from should be reversed.

RICH and CARR, JJ., concur; BURR, J., concurs in result. HIRSCHBERG, P. J., dissents.

BURR, J. I think that there was a conflict of evidence in this case, and that under the rule of law as laid down in our previous decision it would have been error for the trial court to have granted the motion to dismiss the complaint or to have set aside the verdict as contrary to law. But in view of the vague and conflicting testimony given by plaintiff's witnesses, which was opposed by the strong and convincing evidence of defendant consisting of testimony of defendant's engineer and brakeman, and the inferences to be draw from the physical fact of the position of decedent's body after the accident, I think that the verdict is against the weight of the evidence and should be set aside upon that ground, and I therefore concur in the result.